The case this afternoon is case number 4-14-1037, Aaron Hudson et al. v. Village of Ridge Farm. And for the appellant, it's Mr. Stokes, is that correct? All right, thank you. And for the appellee, it's Mr. Meyer, is that right? All right, counsel, as you see, we are missing Justice Connacht this afternoon. Justice Connacht is not able to attend oral argument this afternoon. He will have available to him the oral argument via the recording. He will be a fully participating member of the panel deciding this case. All right, Mr. Stokes, are you ready to proceed? Yes, sir, I am. All right, you may. May it please the court, Mr. Meyer, my name is Gary Stokes, and as indicated, I represent the plaintiffs, the Hudson's, in this matter. I begin with a discussion of the public duty rule, a special duty exception to the public duty rule. I have to discuss these concepts because, frankly, that's the basis on which the trial judge rendered his opinion in his decision. To deny the Hudson's the opportunity not only to recover damages, but even the opportunity to tell the jury, their peers, about their story. About a month ago, I lost a civil jury trial. You all may not have experienced that. I'm sure you're better trial attorneys than I am, but it's a painful experience. It hurts, leaves scars, a very hard thing to do. But in retrospect, I can say this, my client in that case had the opportunity to tell his story. He had the opportunity to present that to a jury of his peers and let them judge his behavior and judge the defendant's behavior. These folks, to this point, haven't even been afforded that opportunity. Sometimes people just need the opportunity to be able to say, this was wrong, what happened to me. This should never happen, and it should never happen to anyone else. There's a benefit to that alone. I think it should be very, very extreme circumstances before someone is denied the opportunity to present their case to their peers. I think the case law backs that up. Now, the public duty rule is fascinating. I wasn't even aware of the extent of the public duty rule and the cases in support and against until I had this case. And I was imagining, if your 15-year-old son came to you and said, Dad, can you tell me what the public duty rule is? Sure. Public duty rule means that the municipality owes a duty to the public at large, son, not individuals. That's essentially what it is. Your son might say, oh, okay, well, that's beautiful. That's clean. That's concise. It's brief. It's clear. Who could not understand that? So then imagine your son indicates, well, Dad, in my civics class, we've been studying sovereign immunity. And it sounds like the public duty rule is essentially sovereign immunity. Well, son, yeah, I guess you're right. It is sovereign immunity. Well, Dad, in a couple of years, I'm going to get my license. And if you could tell me, if I'm driving my car through town and I enter an intersection where I have the green light and a police officer is leisurely driving his car across town and he spaces out, Dad, and blows through a red light and hits me and hurts me, then that means I can't recover, right, because I'm an individual. It's not the public at large. Well, how do you answer that? Well, the Aikens case starts rolling through your head. Well, what about this, Dad? You know Billy Swanson. After the football game last week, Coach Jones was really angry. And in the locker room, he pushed Billy into the locker room, pushed him really hard, broke his arm. Now, the coach got fired. We've been hearing rumors that at Coach's previous school, he did the same thing to another kid, another player. And the administration hit it, asked him to leave, and even wrote a letter of recommendation for him to come here. Billy couldn't recover, right, because Billy's an individual. And the public duty rule says the duty is owed only to the public at large, right? So they can't recover in those cases. I couldn't recover and Billy couldn't recover. Well, son, as I've told you in the past, for every rule, there often is an exception. For the public duty rule, we have something called special exception, the special exception doctrine. So your son says, well, so then I could recover under the special exception doctrine to the public duty rule. And Billy could recover under the special exception doctrine to the public duty rule. Well, actually, son, no, you couldn't, because neither you nor Billy were under the control of the police officer or the other school at the time. Well, what is the rule? How do I know whether someone can recover or not recover if the basic rule is that there's no duty owed to individuals, only to the public at large? Well, let me just interject here. I don't understand how the public duty rule is applicable here. It's not that you're suggesting that there was a duty to provide sewer service and the defendant failed to provide sewer service. That might implicate the public duty rule. Although, based on case law even there, it's somewhat doubtful that it would be. But here, the duty being alleged is the duty on the part of the city to avoid injuring your client through the use of this jetting process. So where does the public duty rule, how does the public duty rule come into play there? I mean, I have a concern about that. Maybe Mr. Meyer will discuss that. Maybe that's not even particularly relevant to the case here, because it would seem that the traditional duty analysis is more what's being emphasized. I completely agree with you, Justice Harris. We have argued from the beginning that the public duty rule has no application here, because of precisely what you've indicated. In fact, I, after reading all of these decisions, agree completely with Justice Freeman 20 years ago when he wrote, it's out, it doesn't belong here anymore. You can't reconcile the cases with one another anymore. The public duty rule needs to go away. It's done. Someone might say on the bench, but wait, you can't get rid of the public duty rule. What if in Springfield someone sues a police officer when they got injured in a high crime area because they didn't patrol that enough? We've got to be able to protect the city, the police departments, and so on. Well, that's covered by the Tort Immunity Act. There is no justifiable reason for recognizing the public duty rule anymore. So I appreciate your comment. I don't think it applies here. Well, and the reason I'm saying I don't think it applies, or that I have a concern or a doubt as to whether it applies, isn't that I think the public duty rule is gone. I mean, the cases still cite the public duty rule for the provision of police and firefighting services. In Brooks v. McLean County Unit District No. 5, it notes how public duty rule has been applied to school districts. But here, you're not talking about the provision of sewer service or the duty to provide sewer service. That's not implicated here. I think maybe the focus of the argument should be on the traditional duty analysis and how your client was owed a duty under the four elements of the traditional duty analysis. Yes, sir. Yes, sir. And we highlighted that in our brief, first and foremost, with respect to the duty to warn predominantly. There are disputes between the parties. Obviously, it's highlighted in the briefs regarding exactly what happened in this previous episode, whether it was a gurgling or whether water was blown out of a toilet and what significance that should have in terms of notice for the water superintendent and the crews that are applying this 1,200 pounds per square inch water pressure in these lines. Again, as I've indicated in my brief, I believe that's an issue for the jury to determine whether they should have been on notice for that or not. But clearly, this was more than just a happenstance like not anything really serious happened in that case, as much as the defense would like us to believe that. It was blown out of the toilet. Does it have to blow out of the toilet over someone's legs to be noticed? Does it have to blow out five feet like it did on my client to be noticed? I think that in particular is an area that we're getting into what the jury should be deciding in that regard. The four items when determining duty itself, I think the Happel case and the Ward case are the defining case law in this area. I think it's interesting, a lot of argument by the defense that, well, this wasn't sufficient to provide notice, this one other episode that occurred before. They do this about 12 times a year, and this was the only time it had happened. In Ward versus Kmart, it had never happened. And the circuit court and the appellate court found no duty in that case because there had never been any incident to put them on notice. And the Supreme Court disagreed. They said, when you stop and you think about this, is it reasonably foreseeable that this could happen with someone carrying a large mirror or something large that might block their vision out the front door and hitting this pole? Clearly, a reasonable person could determine that, yeah, they should have foreseen that, that that could happen. Same here. Isn't it reasonably foreseeable that if it's happened before, they know waters can be blown out of the toilet? Do we have to establish that it has to be blown out five feet or three feet or enough to cover the legs of the individual on the toilet? This particular person wasn't on the toilet, thank God. What's the evidence here establishing how this happened? What caused it? Well, the simplistic answer is that we know it was caused by the injection of the high-pressure hoses into the line. We don't have an expert saying, well, it's because of a problem. There was a blockage in the main line or there was a blockage in the lateral line. There was a lot of time spent by the defense in their brief and argument indicating, well, there's something wrong in the plaintiff's line. There's absolutely no evidence of that, none. It is a reasonable inference that the blockage was just past the plaintiff's line, and when 1,200 pounds of water pressure hits that blockage, it's going to take the path of least resistance. Well, what you have is you've got some action taken on the part of the municipality, and then over here in this household something that happens, but you don't have any evidence establishing what happened between points A and B. In order to establish foreseeability of this occurring, do you have to have some evidence of what actually happened here? Do you have to have an expert witness surmise on we think it may have been a blockage? I don't believe so. In my opinion, you would not. It had happened before, and that's in particular why we have count two on Ray Simpson. The instrumentality here is under the complete control of the city. The plaintiffs know nothing about this. The plaintiffs know nothing about when they do it, how they do it, or that this kind of incident could even occur prior to it occurring to them. So, you know, is there an obligation to say, well, we have established that there's no question that the cause of this poor woman's experience was that there was a blockage two feet up in the main line just past their lateral line, causing the water to backflow and shoot up into their bathroom. I don't think that that's necessary. I think that a jury is allowed to conclude and make reasonable inferences. And certainly, as I said here, it's almost impossible for us to make a determination after the fact about what really occurred or what really happened. I will give you this. We went through great detail in questioning of the individuals who were operating the equipment to see if there was anything unusual about what they did on this particular date and time. And there's nothing in their testimony that suggests they did anything different. We confess that. But we know that what happened, and we know it had happened before, though not to the degree it had happened. And so our primary emphasis here is that, at the very least, give us some warning. I think it's interesting. I think it's critical, actually, that the water superintendent in his deposition indicated, I said, how do you prevent this from happening in the future? Is it going to happen? He said, yes. Let's say you don't have the reception option. Let's say that the determination is made that the instrumentality here included the laterals, which were their clients. That's private property there. And so the determination can't be made that the instrumentality was completely within the control of the municipality and that you can only proceed on negligence. What conduct do you have on the part of the defendants that would identify negligence here? That they knew this situation could occur. But what did they do? As for seeability, what conduct was negligent on their part? Failure to warn. Failure to tell folks. Like in this, as we indicated earlier in the brief, when they do, I wasn't aware of any of this, how they do this, until we got into the discovery, but when they sewer jet an area, it is a one-block area. It's about, I think it was 350 feet. And there are four homes on the north and four homes on the south, this particular road ran east and west. But it is a confined area. It is one block. We, as the mayor indicated, all the time they will post notices on persons' doors that we are flushing hydrants, for instance. The burden, and I believe this is a balancing effect in the Supreme Court's declaration of how you determine whether there's duty there or not, you balance the burden against the foreseeability of what may occur, what could occur, what they know can occur, and what the clients have no idea can occur. You balance that. And as indicated in the Ward case, a simple notice inside of the store, watch as you exit the doors for the concrete post. In this case, they could very simply say, because they indicated it takes about an hour, and they know when they're going to do it, they could simply put a notice on each of the four, eight houses. We are going to be doing this between 3 o'clock and 4 o'clock tomorrow. Please be aware. Either you can remain out or you're off the toilet or don't use the facility during that period of time. If you have any questions, let us know, type of thing. Very simple. Very easy. Has the city done that before? Not for that. They have for, and I asked the mayor that specific question, what do you notify people about? We notify them if they're flush hybrids. We notify them if there's a boil order. We notify them. There's actually several other things, and she indicated that they have different ways of notifying, but often they just put a pamphlet on your door, a little notice on your door. Very simple to do. And in this particular case, that's all that would have been required to spare these folks this horrendous experience. Now, it wouldn't have prevented the property damage, I guess, and the bathroom and whatnot, but it would have prevented the horrendous experience that she had and the potential life-threatening effects of being covered with that effluent. So I think that if there had not been the previous episode, I don't think that we would be here, because I think that clearly under the circumstances, giving rise to that duty to warn these folks, they couldn't have possibly known, but the city did. So did that light just come on? You have until the red light. Oh, okay. Under the Tort Immunity Act, this doesn't fit in any particular section of the Tort Immunity Act, barring it. There's reference by the judge, trial court, well, there's a specific provision in the Tort Immunity Act saying that the duty to inspect, the duty to look, to inspect public property, there's a specific immunity for that. We do have a provision in our complaint that there's a duty, that they failed in their duty to inspect. My argument is that, in this case, I'm not necessarily ready to concede that point, because I think that duty to inspect, we're talking about, say, a city building, that they have a duty to inspect to make sure it's not going to fall down on somebody. There's an immunity for that. I don't think that that provision is intended to speak to what we're talking about, was put a camera down there when you know there's a blockage, make sure there's no blockage right here, to inspect that during the process of sewer jetting. So, in my understanding, these immunities are to be strictly construed and narrowly construed. So, I think our situation is a little bit different than that. But it is the duty to warn that is the predominant aspect of our claim. And what we believe would have prevented this, certainly the majority of the problem here, prevented this from occurring. We're just a couple... Counsel, I'm sorry. You have run out of time here. Okay. You'll have time on rebuttal. Thank you. Thank you. Mr. Meyer? May it please the Court? Mr. Stokes? Your Honor, I would like to first start out by explaining, as is pretty much laid out in the depositions, through not only the maintenance workers, but the maintenance supervisor, how this sewer system works. There are mains. There are collaterals. And there are lateral lines. The mains are the large mains running down the main highway of the village. The collaterals branch off to different neighborhoods. And the laterals go from each individual house to connect to the city's sewer system, the collaterals themselves. There is nothing that indicates, and I think the plaintiff concedes, but I don't want to put words in the plaintiff's mouth, that the village had any authority whatsoever as to inspecting or constructing or maintaining those lateral lines. Mr. Stokes wants to rely very heavily on the prior incident, which happened at another resident's house. A couple of things about that. First of all, that other incident was not in the same neighborhood. It was a year earlier. And if you do read the facts as supplied in the depositions, you don't have to rely upon what I say, what I argue, or what Mr. Stokes argues. But you will find that the facts in the depositions clearly state that this was a bubbling over incident. Nonetheless, I still don't think that's really the most important issue here. As you see, I'm not arguing very much about the public duty rule. I understand it is a controversial doctrine, and I will rely on my brief for that part. However, I think it's important to talk about the absence of any facts. Mr. Stokes so much wants to believe that he himself knows exactly what happens when a jetter system is used, and how it can go awry into someone's house through that resident's own lateral. In Mr. Stokes' opinion, it had to be the use of the jetter system. It couldn't be anything else. Well, as you stated, Judge Harris, this isn't a resident's case. And the reason for that is, and this was not a continuous incident that started with the use of the instrumentality to the ultimate injury. It involved the use of the instrumentality water. Something wrong at the joint between the lateral and the collateral,  and that lateral was in such condition that it allowed to spew out the toilet. Now, what could have been done with that lateral, I don't know. It's not my burden. Who has the burden of proving the elements of a cause of action? Who has the burden of proving facts sufficient to show the establishment of a duty? That falls upon the plaintiff. It does not fall upon the defendant. It makes no difference whether or not we say, well, it could have been this, or it could have been that, because we don't even have to get there unless Mr. Stokes and the plaintiff can prove through facts that it is more likely a result of the use of the jetting system apart from everything else. But you didn't move for summary judgment based on lack of proximate cause evidence. No, and I've got to admit that going back way, way, way back, 35 years, unfortunately, when I went to law school, and I took my courts class, and we went through the duty analysis, and I can't remember the name of the case, but it involved scales at a railroad. But the point there was that there is a fine difference between the argument as to proximate cause and the argument as to duty, because, in other words, you would have to foresee the problem that ultimately happened in order for there to be a duty. Things have to happen in order for there to be a causal connection. If that's the case, we did have one other prior problem with the jetting system and a lateral to the house, right? That's correct. Wouldn't that put the city on notice? Well, let me put it to you this way. If it had been determined that it was the use of the jetting system that caused the water to go up the lateral, that had been determined, I would have to agree with you. There's no such determination. But there was no contrary determination either. Exactly, and then when there is no contrary determination, who does that fall to? Who has the burden? The plaintiff has the burden of presenting facts to show the existence of facts sufficient to show a duty. That simply hasn't been done here. We're not here to prove anything. We are here to simply say the plaintiff has not carried forward and brought forth not even enough facts, brought forth any facts of any type of negligence. Okay, let's go there. Your client didn't move for summary judgment based on a lack of approximate cause evidence, but you did assert lack of evidence establishing negligence. Put aside the Ray Sips account, is there evidence in the record that, the non-movement here establishes your client was negligent? Is there any evidence that establishes that my client was negligent? Yes. I can't find any, Judge, and believe you me, I have looked. There are allegations within the complaint. That's all that there is. There are no facts to support any of the specific allegations of negligence. Also, now Mr. Stokes is relying primarily on the failure to warn. And the problem with that is that assumes that there is a foreseeable risk of injury merely from the use of the jetter system, merely from doing routine maintenance on the sewer system. That's not the case. We have one incident where a lateral owned and controlled by the owner somehow allowed water from that jetter system to go up. Let's take it a step further. Even in that prior incident, there were other residences on that neighborhood. None of those reported a problem. With respect to this particular case, the plaintiffs were asked specifically, well, did you check to see whether any of your neighbors that were on that same collateral line, did they have any problems? Did any water come up through their system? No. So let's say you've got, I believe the number is seven other residences. Maybe it's three or four. I don't know. It doesn't make any difference. Bottom line is the only residence that was affected was the plaintiff's residence. Now, if we're talking about inferences, what's the one inference that you can draw from that? There was nothing wrong with the use of the jetter system. There was nothing wrong with the collateral. The problem occurred at the lateral line level. I'm not saying that's what the facts are. I'm saying that's the only inference that you can derive from the facts as they have been developed through discovery. The only other thing that I really want to point out is that there is one community that I'm sure that Mr. Stokes doesn't want to talk about, and I don't blame him, and that's the community that is provided by Section 2201, 745 ILCS 10-2-201, which states that a public employee, and by virtue of other parts of the community app, the entity itself, serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion, even though abused. Whether or not the village of Ridge Farm was to be warned whenever there was routine maintenance being performed on the sewer system is a discretionary decision that has to be made by the policy makers. Specifically, Mr. Stokes asked the mayor in her deposition, why couldn't you warn him? She says, well, because I was afraid it would create a panic. Now, is that a good reason? Unfortunately, for a plaintiff, that's not for you or I to decide, because this immunity, over and above the other immunities, applies to discretionary decisions even if those decisions are abused. Is it fair? Well, it's past constitutional muster. I know that. Is it the law? Yes. So the fact that the mayor made a determination that it simply wasn't in the town's best interest to warn them of routine maintenance, or the use of the jitter system for that matter, that decision is entitled to absolute immunity. And the case law supports that. I'd be more than happy to answer any other questions. Okay. Thank you, Mr. Meyer. Appreciate it. Thank you. Mr. Stokes. Thank you. And if I might deal with that last issue first. The mayor testified she wasn't even aware of the prior incident. There was no discretion exercised here, and there was no policy set, because the water superintendent hadn't even told her that this had happened before until after this incident occurred. There was no discussion, there was no roundtable, how do we deal with this problem going forward. It never happened. They can't say this is covered by an immunity because they exercise discretion, and whether that was the correct decision or not, too bad, it's immune. They never exercised the discretion at all. It was never discussed, because she didn't know. She never knew. The water superintendent had never told her, had never shared it with her. The testimony that people will panic is after the fact saying, well, this is what I would have done. It's self-serving, it's speculative. I don't think that's frankly what would have happened, but regardless. Justice Harris' question, was there evidence of negligence? In terms of the negligence in the application of the sewer jetter itself into the lines, we couldn't find any evidence that they did something wrong in how they were doing that. It's a different question to say is there evidence of negligence in failing to warn people, when in your own mind you believe that this has happened before and will happen again, and there's nothing you can do to prevent it. If that's the case, that's negligent. That's unreasonable to not tell people. This can happen again. In fact, it will happen again, I believe, is his testimony. That's the negligence, that's the broad-based negligence that we believe is the most critical here as to why this happened to this poor woman on this particular occasion. They had the information, plaintiffs did not, and the negligence is failing to pass that along to people. Say, take your own measures, whatever you think, whatever is appropriate in your mind, but here's our experience, here's what could happen. That's the negligence. I think Mr. Meyer, in answer to Justice Appleton's question, said, had it been determined that the jetting caused the water to go up to the lateral line, he would agree with you. There was a discussion then about proximate cause versus duty, and so on. There's no question here that that answer to that is, had it been determined that the jetting caused the water to go up to the lateral line, he would agree with you on that. Of course the jetting of the sewer lines caused that water to do that. The water didn't just explode five feet up and five feet out coincidentally while they were outside in that block running 1,200 PSI water through the main lines. That's not, there's no question here that that caused, A led to B. A caused B. The same in the previous incident. She came down immediately while they were there and he pulled the hose out and she said, water blew out of my toilet. This is the previous case. There's no question here. Of course, is that a reasonable inference? It's the only inference. Now, can you say, well, but was there anything negligent in how they were doing that? That's a different question and probably impossible to prove. But, you know, the, again, the duty to warn when you know that that can happen seems to me on its face to be clear. So the argument that, you know, well, there's not proof here that the jetting A caused B is ridiculous. Of course it caused B. That's what, and that is common sense. That's reasonable inference. When you're putting 1,200 pounds per square inch water into a confined area, things can happen and it has happened at least twice in this particular town. Is there evidence in the record on the part of your client that she would have done things differently had there been a warning given? I don't think that they asked for that question in her deposition. In a duty to warn case, is that necessary evidence? I don't believe so. I don't think there was evidence in the Ward case, or at least it wasn't discussed in the decision, that the plaintiff in that case who ran into the concrete barrier had to indicate that if I had had a warning, I would have done this and such or that and such. Yeah, but that was decided on duty there. If this failure to warn issue is addressed in the context of summary judgment, doesn't there have to be evidence that the plaintiff's conduct would have been different but for the failure to warn? I honestly don't know the answer to that, Justice Harris. I would argue that that's a reasonable inference that if somebody is told there's a bomb in the building, you might want to consider leaving. I don't think that they would have to testify that, yeah, I would have left. Thank you. All right. Thank you, counsel, both. This case will be taken under advisement and a written disposition shall issue.